DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Joseph Merante appeals from the Lorain County Court of Common Pleas, which affirmed a decision by the Unemployment Compensation Review Commission to deny him unemployment compensation. We affirm.
 I. {¶ 2} Mr. Merante is married and has two children, ages six and sixteen. Mr. Merante's wife, Sharon, suffers from migraine headaches. During her youth, they occurred on a monthly basis and were associated with her menses. In 1993, she was severely injured in an automobile accident, and approximately a year later began to suffer increasingly severe headaches, often triggered by weather changes or stress. These headaches ranged from mild (two to three per week) to severe, which left her bed-bound and nauseous (once or twice per month), to debilitating, which required visits to the emergency room (once or twice per year). By all accounts, these headaches were responsive to rest and medication.
 {¶ 3} Mr. Merante had been employed by the Lorain County Department of Job Family Services (JFS)[1] since November 1984. At some point, Mr. Merante began to stay at home to care for his wife during her migraine headaches rather than go to work. Accordingly, these absences were as unpredictable, sporadic and intermittent as the onset of the headaches. However, these absences were also recognized as authorized leave, to the extent that they fell within the Family and Medical Leave Act (FMLA) of 1993, Pub.L. No. 103-3, 107 Stat. 6 (codified as 29 U.S.C. Chapter 28, Sec. 2601, et seq.). In 2001,[2] Mr. Merante used the maximum 480 hours of leave designated by FMLA. This was certified by a physician and apparently uncontested by JFS. Again in 2002, Mr. Merante used the full 480 hours, with certification from a physician and endorsement from JFS.
 {¶ 4} However, questions arose in 2003 when Mrs. Merante's physician, Dr. Mark Bej, completed the FMLA recertification form but stated that leave was not necessary to ensure Mrs. Merante's care. Dr. Bej later amended the form to assert that leave would be required, and noted: "Migraines have worsened. I don't know why. This is not unusual; migraines." After some dispute, Mr. Merante was allowed to replace the certification from Dr. Bej with a certification by another physician, Dr. Darshan Mahajan, who wrote:
"[Sharon Merante] suffers from migraine headaches which occur sporadically, at times as frequently as twice a month. The headaches may last two days. These can be quite debilitating. Sharon requires help from her husband, Joe Merante, when these attacks occur, depending on the severity. Specifically, she may need help walking to the bathroom, getting cleaned up, inserting rectal suppositories for the nausea and vomiting, as well as supervising the children."
However, Mr. Merante contested Dr. Mahajan's opinion that his aid was needed only one or two days per month, and Mr. Merante was allowed to obtain a certification from yet another physician: a Dr. Steven Samples of the Cleveland Clinic Headache Center, who had treated Mrs. Merante in the past. Contrary to Mr. Merante's expectation, Dr. Samples' opinion was that Mr. Merante was not needed to assist his wife during her migraine headaches. Finding this opinion to be in conflict with that of either Dr. Bej or Dr. Mahajan, the parties (JFS and Mr. Merante) mutually agreed that Dr. Tarvez Tucker would render a deciding opinion, pursuant to FMLA's provisions on conflicting opinions.
 {¶ 5} Dr. Tucker issued a three-page letter, in which he summarized Mrs. Merante's medical history, offered a diagnosis of her present condition, and forecasted her anticipatable needs and concerns. The letter concluded:
"However, Mr. Merante has used 480 hours of FMLA time per year. This amount of time simply does not correlate with the one or two severe headaches per month that [Mrs.] Merante reports to me as her current frequency. I certainly support Mr. Merante's wish to be with his wife on these occasions. He will need to drive her to the ER once or twice a year. She should not drive with these profound migraines.
"Most adults are capable [of] taking their own oral or rectal suppositories when migraine strikes. She can simply keep them by her bedside when migraine strikes suddenly. She does not have associated weakness of her limbs or syncope with her headache that would preclude her taking care of herself of taking medications, including rectal ones.
"I understand that Mr. Merante would wish to be by his wife's side for psychological support. She does also suffer from depression. I believe he could offer his support effectively when he returned from work, or in the morning before leaving. Migraine is a longstanding disorder, as is depression, but in my opinion it does not require 480 hours of FMLA care. I would suggest the care needed for [Mrs.] Merante would approximate more reasonably about 100 to 120 hours per year."
 {¶ 6} By September 26, 2003, Mr. Merante had used 120 hours of FMLA leave for the stated purpose of caring for his wife. Thereafter, he continued to miss work and continued to assert that it was to care for his wife. Specifically, in a November 10, 2003 letter to JFS, Mr. Merante explained that he had taken additional FMLA leave because his wife "continues to have migraine headaches." Because Mr. Merante had exhausted the 120 hours that Dr. Tucker had deemed necessary, JFS disapproved this leave and implemented its progressive discipline policy for unexcused absences. Ultimately, Mr. Merante was terminated.
 {¶ 7} Mr. Merante filed a lawsuit in federal court, alleging that JFS had interfered with his rights under FMLA and that his termination was in retaliation for taking FMLA leave. That lawsuit is separate and distinct from the present appeal, which is limited to review of Mr. Merante's claim for unemployment compensation.
 {¶ 8} Mr. Merante filed a claim for unemployment compensation with JFS, but was denied upon a finding that he had been discharged for just cause. Mr. Merante appealed to the director and the denial was affirmed. Mr. Merante further appealed to the Unemployment Compensation Review Commission. A hearing officer heard the appeal and rendered a decision, dated August 20, 2004. The hearing officer affirmed the prior denial, finding:
"The Hearing Officer concludes that [Mr. Merante's November 10, 2003] letter did not need to be addressed by the employer as an initial request for leave because the medical condition that [Mr. Merante] stated existed with his wife that required his absence was the same condition for which a certification had been obtained according to the procedures outlined in the [FMLA] regulations and leave time up to [one] hundred twenty hours had been approved and used. [Mr. Merante] was not presenting a situationwhere there was a worsening [of an] existing condition or development ofa new condition. The fact that [Mr. Merante] used one hundred and twenty hours of leave time available early in the one year benefit period is not sufficient medical evidence that his wife's condition had worsen[ed]. Dr. Bej's original certification for the disputed certification period mentioned that the migraines [of Mr. Merante's] wife had worsened but that is not unusual and he did not find the worsening condition needed to be addressed by [Mr. Merante's] absence from work other than to help with transportation." (Emphasis added.)
From this, the hearing officer concluded that JFS properly disapproved those absences in excess of 120 hours and found that sufficient to constitute just cause in connection with Mr. Merante's termination. Therefore, the hearing officer concluded that Mr. Merante was not entitled to unemployment compensation.
 {¶ 9} Mr. Merante appealed to the Lorain County Court of Common Pleas, which affirmed the decision, finding it to be lawful, reasonable and supported by the evidence. Thereafter, Mr. Merante timely appealed to this Court, asserting a single assignment of error for our review.
 II. Assignment of Error
"THE TRIAL COURT ERRED IN UPHOLDING THE AUGUST 20, 2004 DECISION OF [THE] HEARING OFFICER DENYING MERANTE'S CLAIM FOR UNEMPLOYMENT BENEFITS."
 {¶ 10} Mr. Merante alleges that the trial court erred in its reading and application of FMLA, and because JFS had violated FMLA (at least by his reading and application of it), the trial court further erred in finding that he was terminated for just cause. Thus, arguing that his termination was not for just cause, Mr. Merante reasons that he was entitled to unemployment compensation and the trial court's denial of unemployment compensation is reversible error. We disagree.
 {¶ 11} When a common pleas court reviews a decision by the Unemployment Compensation Review Commission, it must affirm unless it concludes that the decision was "unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.282(H). When an appellate court reviews the common pleas court's review, it applies the same standard. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, 696-97. Therefore, our focus is on the Commission's decision, rather than the common pleas court's review. Tenny v. OberlinCollege (Dec. 27, 2000), 9th Dist. No. 00CA007661, at *1. This Court must determine whether the Commission's decision is supported by evidence in the record, but we may not make factual findings or determine the credibility of witnesses. Tzangas, 73 Ohio St.3d at 696. See, also,Barilla v. Dept. of Job and Family Servs., 9th Dist. No. 02CA008012, 2002-Ohio-5425, at ¶ 6.
 {¶ 12} The Commission concluded that Mr. Merante was terminated for just cause, and therefore he was not entitled to unemployment benefits. See R.C. 4141.29(D)(2)(a) ("[N]o individual may * * * be paid benefits * * * if the director finds that: [t]he individual * * * has been discharged for just cause in connection with the individual's work * * * [.]"). Just cause was determined to arise from Mr. Merante's unjustified absence from work. See Bennett v. Ohio Dept. of Job Family Servs., 7th Dist. No. 03-MA-222, 2005-Ohio-3313, at ¶ 28 (holding that absenteeism may constitute just cause for termination of employment). Mr. Merante's absence was deemed unjustified based on a finding that, although he was entitled to certain amount of leave under FMLA, he had exceeded the amount established via the FMLA process. Mr. Merante disputes this finding by claiming that his wife's condition had changed,[3] which necessarily entitled him to additional FMLA leave time. At issue is who has the burden of proof on an employee's claim of changed conditions, after the initial FMLA certification determination has been resolved pursuant to 29 U.S.C. 2613(d). We find that the employee bears such a burden.
 {¶ 13} As explained above, Mr. Merante's wife suffers from serious migraine headaches and, at least as early as May 2000, Mr. Merante had begun taking leave under the FMLA in order to care for her. See29 U.S.C. 2612(a)(1)(C) ("[A]n eligible employee shall be entitled to a total of 12 workweeks [480 hours] of leave during any 12-month period * * * [i]n order to care for the spouse * * * of the employee, if such spouse * * * has a serious health condition."). Mr. Merante had supported his prior requests for this FMLA leave by submitting a medical certification pursuant to 29 U.S.C. 2613(a), and his employer, JFS, had granted the request. However, by May 2003, JFS had become doubtful of the validity of this leave due to conflicting medical opinions. See 29 U.S.C. 2613(c). In accordance with the provisions set forth in FMLA, a jointly-approved physician ("third health care provider") resolved the conflict of opinions and rendered the final decision as to eligibility. See 29 U.S.C. 2613(d)(2) ("The opinion of the third health care provider concerning the information certified under subsection (b) of this section shall be considered to be final and shall be binding on the employer and the employee."). Thus, both Mr. Merante and JFS were bound by the third physician's decision: Mr. Merante was entitled to 120 hours leave time, which could be used intermittently over the course of a year (May 2002 to May 2003) in order to care for his wife. But, within five months time, Mr. Merante had used the full 120 hours and immediately took additional leave, asserting that he had a right to it under FMLA. JFS terminated Mr. Merante for unauthorized absences.
 {¶ 14} On appeal, Mr. Merante argues: (1) that additional leave was necessary due to a change in circumstances (i.e., a worsening condition of his wife's migraines); (2) that JFS was thus forbidden from terminating him without further inquiry or request for certification, as prescribed by FMLA; (3) that JFS's failure to abide by the provision of FMLA was a violation of a federal statutory right; and therefore (4) this violation necessarily thwarts a finding of just cause, as a matter of law. See, generally, Jones v. Ohio Bur. of Emp. Servs., 7th Dist. No. 99 C.A. 224, 2000-Ohio-224. We find this argument flawed.
 {¶ 15} Regarding Mr. Merante's claim of changed conditions, we find this unsupported by the record. Furthermore, we find this to be a factual determination that was properly decided by the Commission, and which we are not at liberty to revisit on appeal. Tzangas, 73 Ohio St.3d at 696. The Commission conducted a hearing, evaluated the credibility of the evidence, and concluded that Mr. Merante "was not presenting a situation where there was a worsening [of an] existing condition or development of a new condition." The Commission based its decision on the plain language of Mr. Merante's November 10, 2003 letter to JFS, the medical certifications, and the circumstances surrounding Mr. Merante's absences. We do not find this decision to be "unlawful, unreasonable, or against the manifest weight of the evidence." Tzangas,73 Ohio St.3d at 696-97.
 {¶ 16} In arguing against this finding, Mr. Merante points us to the separate lawsuit proceeding in federal district court and an order by Hon. Judge Solomon Oliver that issued from that lawsuit, which speculates:
"[O]ne could reasonably conclude based on these [Oct. 30, 2003 and Nov. 10, 2003] letters that [Mr. Merante] alleged `changed circumstances.' * * * [It is] therefore possible that by alleging `constant' migraines, [Mr. Merante] was alleging a change in Mrs. Merante's condition. The court finds that [Mr. Merante's] Complaint pled a change in circumstances sufficient to avoid judgment on the pleadings." (Emphasis added.) Merante v. Lorain Cty. Commrs. (N.D.Ohio, Dec. 1, 2004), Judgment Entry, Case No. 1:04 CV 628.
Notwithstanding the equivocal nature of these statements, the very purpose of the analysis (to deny judgment on the pleadings) would deter us from relying on this as a factual finding.[4] Mr. Merante concedes that we are not bound by this order, and we will rely on our own review of the record before us. However, even under Mr. Merante's reasoning, once we find that he failed to assert a change in condition, we may conclude that JFS did not violate FMLA, and since Mr. Merante claims no other basis to refute a finding that he was terminated for just cause, we must agree with the Commission that he was terminated for just cause. Accordingly, his claim for unemployment compensation was properly denied.
 {¶ 17} Regarding Mr. Merante's argument that JFS was forbidden from terminating him without further inquiry or another request for certification, we disagree with this proposition, as it would effectively render meaningless FMLA's physician certification/conflict resolution scheme. See 29 U.S.C. 2613(b)-(d). Mr. Merante argues that even though there had been a third physician's final and binding resolution, pursuant to 29 U.S.C. 2613(d), he was not bound by it. Rather, he insists that he needed merely to notify JFS of his desire for more FMLA leave, and thereafter JFS was bound by the FMLA procedure for an original notice — that is, JFS had to inquire further and request from him the prescribed medical certification. See Brenneman v. MedCentral Health Sys. (C.A.6, 2004), 366 F.3d 412, 422 ("Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA."). See, also, 29 C.F.R. 825.302(c); 825.305(a).
 {¶ 18} To the contrary, we conclude that the third physician's opinion is "binding on the employer and the employee," in accordance with the plain language of the statute. 29 U.S.C. 2613(d)(2). An employer may rely on this opinion as final, despite an employee's subsequent notices or requests for additional leave:
"Where an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence. And that medical evidence should come from the employee in time to save his job, not during a subsequent law suit." Stoops v. One CallCommunications, Inc. (C.A.7, 1998), 141 F.3d 309, 314.
JFS's duty of inquiry was satisfied by the first round of certifications and Dr. Tucker's final resolution of the conflicting opinions. At that point, JFS was not obligated to inquire further or request additional certification; JFS properly relied on Dr. Tucker's final certification. The burden was on Mr. Merante to produce "overriding medical evidence" of an error by Dr. Tucker or some changed condition. Mr. Merante failed this burden. In fact, he did not even attempt it.
 {¶ 19} Mr. Merante cites two cases for the proposition that an employer's sole recourse is to pursue further inquiry or seek recertification from the employee, and that an employer has no recourse to terminate the employee. See Cavin v. Honda of Am. Mfg., Inc. (C.A.6, 2004), 346 F.3d 713; Peter v. Lincoln Tech. Inst. (E.D. Pa., 2002),255 F. Supp.2d 417. However, these cases are of a different character than the present case. Foremost, these cases both involved original notice situations, in which there had been no final and binding physician certification. Cavin, 346 F.3d at 726; Peter, 255 F. Supp.2d at 444. Furthermore, these were both appeals from summary judgment, in which the courts' perspectives were attuned to finding a material question of fact, with inferences granted in favor of the non-moving party. See Fed.R.Civ.P. 56(C). Therefore, we find these cases unpersuasive in regard to the circumstances of the present case. While it is reasonable to forbid the employer from terminating the employee without seeking any certification, it is unreasonable to forbid that same employer from terminating an employee once certification has been sought, conflicting positions have been resolved, and FMLA leave has been expressly disallowed.
 {¶ 20} Mr. Merante relied on Dr. Tucker's certification in taking 120 hours of leave without consequence, and he must be equally bound to it. We find that Mr. Merante's legal claim is without merit, JFS did not violate FMLA, Mr. Merante was terminated for just cause, and therefore, Mr. Merante is not entitled to unemployment compensation. Therefore, his assignment of error is overruled.
 III. {¶ 21} Mr. Merante's sole assignment of error is overruled. The decision of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Moore, J. concur.
[1] The Lorain County Department of Job Family Services (JFS) is one of two appellees in this case, the other being the Lorain County Auditor. JFS is a county agency, and therefore, Mr. Merante was actually paid by the Auditor. Together, these two agencies constitute his "employer" for purposes of unemployment compensation.
[2] For ease of reference, this time period is designated "2001," but it was not calendar year 2001; it was the 12-month period between May 2001 and May 2002. Similarly, the time frame designated "2002" was actually the 12-month period between May 2002 and May 2003. Thus, the period designated "2003" actually began in May 2003, although the disputed medical certifications were prepared later and Mr. Merante was actually terminated on November 14, 2003. However, the exact time periods are not integral to this analysis and the general references to 2001, 2002 and 2003 are sufficient.
[3] At points in the record and in his briefs to this Court, Mr. Merante seems to promote an argument that he is entitled to the full 480 hours of FMLA leave time, without limitation. He suggests that once he had established that his wife had a "serious health condition," per29 U.S.C. 2611(11), then the FMLA statute automatically entitled him to no less than 480 hours of leave, regardless of the actual severity of the condition, physician certification(s), or any other circumstances. Though not stated explicitly, we suspect that Mr. Merante draws his assumption from the peculiar wording of the statute: "* * * shall be entitled to atotal of 12 workweeks [480 hours] of leave * * *." (Emphasis added.)29 U.S.C. 2612(a)(1)(C). However, we read this as a maximum, not a mandate. In fact, the associated regulation states: "An eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks of leave * * *." (Emphasis added.) 29 C.F.R. 825.200(a). Furthermore, we find nothing in the case law to support such an extreme entitlement, and indeed, the FMLA statutory provisions providing for medical certification and the generous definition of a serious health condition contradict such an assumption. See 29 U.S.C. 2613; 29 U.S.C. 2611(11). Therefore, we find that this argument lacks merit and we mention it only for purposes of completeness; the text of this opinion is meant to focus on Mr. Merante's articulated argument.
[4] A Fed.R.Civ.P. 12(c) motion for judgment on the pleadings is considered the same as a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim. Branch Internatl. Servs., Inc. v. Budde (E.D.Mich., 1995), 890 F. Supp. 659, 661-62. The motion may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King Spalding (1984), 467 U.S. 69, 73, 81 L.Ed.2d 59. That is, "all well-pleaded factual allegations of the complaint must be accepted as true and the complaint construed in the light most favorable to the plaintiffs." Cuno v. DaimlerChrysler, Inc. (C.A.6, 2004), 386 F.3d 738,742. This is a very different perspective than the fact-finding conducted by the Commission in the present case.